Yes, good morning. My name is Carlos Lugo. I am representing the appellant. You're going to have to speak up and speak more directly into the microphone, please. I'll put it closer to me. Good morning. May it please the Court. My name is Carlos Lugo. I'm representing the Commonwealth of Puerto Rico in this case as the appellant. And I would like to reserve, if I may, two minutes for rebuttal. Yes, you may. Thank you very much. This appeal is about jurisdiction. And we are raising two issues. The first issue has to do with the lack of jurisdiction of the district court to issue the order refusing to allow the automatic stay, the Title III stay before the district court in the case. The second issue is whether the Title III stay applies to this case. Now, regarding the first issue, it is our position that the district court did not have jurisdiction to resolve the question presented by the appellees about the applicability of the Title III stay in PROMESA because that matter was under advisement of this court in the three prior appeals that are still pending that were before this court. This court, Suas-Ponte, decided to order the parties to brief the matter whether the PROMESA Title III stay applied to this case. The court was briefed, and because the parties had some consensus points, the court sent them to the Title III procedure to see if they could reach an agreement. The agreement could not be reached. Counsel, I'd like to ask you about the arguments that I think you are not making. Okay? Is it true that you are not arguing that the Title III court alone should have decided the case of the issue of whether the automatic stay applies here? You are not arguing that. No, we're not arguing that because this court can decide it. Okay. Secondly, is it fair to say that if it were not for this court's actions, you would concede that the district court at least has concurrent jurisdiction to have decided this issue? Yes, Your Honor, that is correct. Okay. So then the only question to your mind is the issue of whether the actions of this court deprive the district court of jurisdiction. Could you explain to me more precisely what your argument is? Yes, Your Honor, our argument as explained in our brief is that when a party appeals, every issue related to the appeal that is within the appeal is before the Court of Appeals and the district court cannot resolve it unless the Court of Appeals for some reason decides to remand or to refer the matter for resolution. The question of whether the court has jurisdiction, which is the question that the court raised itself in these three appeals, that question is part of the appeals. So if the Court of Appeals, this court could have very easily said, go to the district court, brief the issue, and let it resolve it, and then we'll take it from there. But it did not do that. What it did is that it sent the parties to the Title III court to see if they could negotiate a lift of state so that the matter could be resolved, the case, those appeals could be resolved here. Isn't the order a little more ambiguous than that? In other words, it didn't say specifically to the parties, go to the Title III court. It said we're holding it in abeyance pending resolution of what happens in the Title III court. Yes. So just to be clear, if that order holding it in abeyance had language that allowed the district court, while we held the appeal in abeyance, to make a ruling on this issue, there would be no jurisdictional problem then, right? Well, we understand that there will be because the jurisdictional question is intricately related to the appeals. No, no, no. Just so I understand, the stay, whether the Title III court would entertain some decision to lift the stay, right? Yes. In order to reach that question, the Title III court first would have to decide that there is a stay. Yes. So clearly the order contemplated the Title III court making a jurisdictional ruling on whether the automatic stay applied. Well, this court has not made that decision. No, no, I understand that. But I'm saying nothing about the order precluded the Title III court from deciding whether the automatic stay applied. No, no, no. So then the question is just, could you read the order to also allow the district court to have made a similar ruling about whether the stay applied? Either it did or didn't. If it didn't, then I understand your argument. Jurisdiction vests in us. We did nothing to suggest the district court had jurisdiction over that issue, so its ruling would be barred. But if the order did allow it to do it, then it's not barred, right? Yes. It is a matter of how the court interprets the order. Okay. The interpretation that we propose. So now let's assume for the sake of argument that we reject your jurisdiction argument. What is your argument on the merit that the district court committed error in entering and deciding the automatic stay did not preclude these injunction enforcement proceedings before the special master, which will then go back to it? Yes, Your Honor. PROMESA is very clear in defining what is property of the estate. It says that property of the estate is property of the debtor. Okay. You know, we've been faced with four or five different statutory provisions argued by the other side as clearly stating or somewhat stating that the stay does not apply. Rather than making a general statement, could you please deal with each of them? I'll go straight to that. Could you please start with Section 748 U.S.C. Section 2106? Yes. Section 7. Section 7 is a general statement of policy that Congress made that nothing in the act does relieve a territorial government from complying with federal laws. But it is very important it has an exception clause right at the beginning. It says except as otherwise provided in this act. If one goes to Section 301A, it incorporates Sections 365 and 922 of the bankruptcy code, so it establishes an automatic stay. An automatic stay by its nature is temporary. It's not completely relieving the territorial government from complying with the injunction. In fact, in this case, we are complying with the injunction regardless of the automatic stay. What we're saying in this case is that at least for this question that we're dealing now, which is a wraparound payment, which is funded with Commonwealth funds, that the case should go to Title III so that the court may act, may leave the state, do whatever it deems necessary. Okay. Can I go back to your first argument, except as otherwise provided in this chapter? You say that's a reference to the automatic stay provision. Is it a reference to anything else? Well, otherwise provided in the act says that if the remainder means that if the remainder of the act contains... Could you please answer my question? So your question was? You say except as otherwise provided refers to the automatic stay provisions, which are incorporated into the chapter. Yes. I asked you whether there was any other provision that it applies to. Either say yes or no, and if you say yes, what other provision? Well, for the purposes of this argument, no. We're saying that the exception, the clause except as otherwise provided by this act, for the purposes of this case, of the applicability of the automatic stay, refers to Section 301. Section 301 is one of the exceptions to Section 7. I understand that point, but if I understand what you're saying, by referring to it as a general provision, and it's set forth in the general section right after the definition, before you get to the adjustment of debts subchapter. I took you to be saying that all that this means is everything in the act under PROMESA applies, and if it has the effect of limiting these impairing or otherwise relieving, you have a federal obligation, then it does. That could be the discharge provision of 524 that's incorporated. It could be the state provision of 362 that's incorporated. It could be the legislative review provisions. It could be the expedited permitting, anything in PROMESA, but what this provision does is makes it clear the only things by virtue of PROMESA's enactment that get you out of federal obligations are those things in PROMESA. Yes. It's not an implied preemption of the field, so suddenly no other federal laws apply. No. That's all it's doing. Yes. Okay, I'm now confused because that answer you've just given to Judge Barron is inconsistent with the answer you just gave me. The answer you just gave me was that the only reference in this, except as otherwise provided, applied only to the automatic stay provisions, in which case you've got a problem explaining why, if it only applied to that provision. It didn't mention that provision. You have now answered Judge Barron that no, in fact, it applies to all other provisions of PROMESA. I'm just trying to get your argument clear. Yes, I misstated my argument when I was answering your question, because it is a very general phrase that can refer to many other provisions of PROMESA. When you answered Judge Lynch, you said for purposes of this appeal, I think what you may have meant was just the only issue on appeal, the only provision of PROMESA that's on appeal that could impair it is the stay provision. So for purposes of this appeal, the only thing that this is talking about is 362, but your position is it's a general provision. Yes. If this was a claim about discharge, you'd be saying, except otherwise provided, encompasses the discharge, except that there happens to be a special discharge part about, which is not true with respect to the stay. That's the idea? Yes, that's the idea. Thank you. But, in fact, the discharge provision argument is made in this case, isn't it? One of the arguments your opponents has made. Well, they're making that argument. The problem is that the discharge provision is a specific provision, that's Section 304D. Okay. If I've understood your answers, you are now down to the argument that the automatic stay cannot be construed as impairing or in any manner relieving the Commonwealth from compliance with federal laws. That's what your argument comes down to? That's our argument, and we're also adding that we are complying with the wraparound payments, the injunction, the estimated payments right now. If you were complying, why would you be seeking a stay? Two reasons, Your Honor. First of all, the... Go ahead and answer. Okay. First of all, the Title III stay is extremely important for Puerto Rico. It is what is keeping the Puerto Rico government working, because it establishes... It's not only the stay of paying obligations, which in this case is nice. Besides, the point is the establishment of an order of taking thousands of claims of thousands of creditors and putting them in an orderly procedure. And that, it is absolutely essential for the Puerto Rico government to function. Are you jeopardized by the ongoing proceedings before the special master? Not entirely. I mean, in fact, very little. But the problem is that if we can, for example, we can get... What was your second argument? Huh? You said you had two arguments. Yes, the second argument, the second concern that we have is that there are, as I said, there are thousands of creditors. And they are all... And the pot to be distributed is limited, necessarily limited. And there will be... And they'll probably be questioning every single decision that is made regarding those funds. If the court, if these cases go through the correct channels to the Title III court, and the Title III court can decide anything. It can decide, well, I'm going to leave this stay and let the District Court finish the case. That's one possible solution. But didn't Judge Swann, in other companion cases, refer those back to the District Court, citing their 15 years of litigation over the wraparound? Well, my remembering, I'm not very familiar with those former cases. What I have been told is that we are alleged... They wanted a declaratory... The plaintiffs wanted a declaratory judgment that these wraparound payments cannot be discharged. And our position was, okay, it's not right for resolution because we're still not at the stage in which we can talk about discharge. Because there's no reorganization plan yet. With respect to the parallel litigation that Judge Thompson asked you about, my understanding is that Judge Swann concluded that the automatic stay applied. But that all she left of the stay, in response to their motion for relief from the stay, was the stay insofar as it applied to the execution of the judgment. But she, in doing that, necessarily concluded that the automatic stay applied. So that if there was a judgment to execute on right now, the automatic stay, per Judge Swann's order, bars the execution of any judgment. Is that right? Yeah, that would be the case. That would be the case, but... No, not whether it would be the case. Is that the current statement? If you don't know, that's fine. No, I don't know. I'm not familiar with the decision of Taylor in those cases. Are you arguing that at this stage in the litigation, we're faced with an execution of a judgment? No. I thought we were many. No. No, you're not. No, I'm not. But the key point that I just want to, and if you don't know, it would be helpful to me if we could just confirm it somehow. My understanding is that in the wraparound state litigation, on the retroactive payments... Yes. The conclusion of the Title III court at present is that the automatic stay applies to that litigation, and that it has been lifted, but only so that the rebasing can occur, and not so that judgment can be executed. If that's wrong or right, I don't know. But if it's right, the significance of that is that if we were to conclude that the stay does not apply here, we would be then making a ruling that would also overturn the Title III court's contrary conclusion that the stay did apply. You don't know the answer. I don't know the precise answer to the question. I don't want to misrepresent the facts. Okay. You've reserved some time. Yes. Thank you. Thank you. I was wondering exactly what I would lead off with, but I guess we could start with the question of what we refer to as the state case and claims involving that and Judge Swain's recent opinion. Obviously, or perhaps not so obviously, we think she made a mistake, but putting that aside, we don't have that in the current case. The current case is prospective injunctive relief. Before you go, just so I get the facts right, though, is it the case that the Title III court concluded that the automatic stay applied to that litigation, and then she gave a relief, but only partial relief, such that the automatic stay still precludes execution of the judgment? That's sort of a yes-no thing. If you don't know the answer, that's fine, too, but it would be really – I think it's critical we understand before we rule about whether the automatic stay applies in this case, whether Judge Swain has already concluded that the automatic stay applies in the other case. I think you have to conclude that she did. It's not evident to me that it was parsed in that clear-cut of fashion, but ultimately, I think you have to assume that she ruled it – as you said, Your Honor. That the stay is in place there, but she then gave substantial relief from it. Yes. Thank you. As to the case before us, it's prospective injunctive relief that began in 2003. Others joined in 2005. This Court has issued – Counsel, I'm going to go back to the concession you just made. Yes. You started by saying this case has to do with prospective relief rather than retrospective monetary payments. I did, Your Honor. And was the issue of prospective relief raised before Judge Swain? The – it was not brought before her, Your Honor. Okay. Just on that point, as I understand, are you making an argument that the question of whether the stay applies depends on whether it's retroactive versus prospective relief? We're not, Your Honor. So your argument applies as equally as to both. It does, but you're asking a question about what Judge Swain – how Judge Swain ruled. I just want to understand what you're asking us to rule on and what the effects of it will be. Yes.  I think so. Yes. Well, I don't know because I think you could rule totally and absolutely, excuse me, on the prospective case, which is the case at issue, without getting into the question of whether Judge – The reason why the stay would not apply to the prospective but not the retroactive. Your Honor, I'm not – Those arguments you give seem to draw a distinction between those two. I'm not drawing – I'm drawing, excuse me, a distinction only for the purposes of this morning. I don't think there's a distinction. Okay. I mean, I think what we have is we have clear-cut – we have a clear-cut set of statements by Congress with support of legislative history, indicating really unequivocally that federal funds and federal programs aren't supposed to be touched by the bankruptcy court, other than maybe having to follow some kind of process to get before the court so that you can get an adjudication. Let me go back to except as otherwise provided in this chapter. Your opponent says that is a clear reference to the stay. Whether he sees – thinks it applies to anything else is a bit of a mystery to me. Yes. What do you think it applies to? Well, we think that when it says except, it uses the term except, that it can't be the whole rest of the statute because then there would be no purpose in Section 7. So the way we read it is that if there is or is or were a clause or provision somewhere else in Pro Mesa which specifically addressed a particular program or a particular issue and there was something that would undermine the basic thrust of Section 7, then that would be given deference. Is there such a provision? No. Any other provision? Then why did they include the except as otherwise provided? Because I think ultimately, Your Honor, you're writing a brand-new statute and you're throwing things in. So we should just treat it as superfluous? I think you should, and I think because – Any other argument aside from treating it as superfluous that would support your position? I think – How could we give content to the except as otherwise provided provision and rule for you? I think if you – let me answer – if I may, let me answer it this way because I'm not sure it's a straight yes or no. The reason we cited other provisions in Pro Mesa that touch upon the same issue is because what we're trying to say is that if you look at the context of Pro Mesa and the way in which it was written, you do have other provisions which support Section 7, at least in this case for our purposes, rather than detract from it. Court orders that have been previously issued are protected. From discharge, right? Yes. Is this – the stay isn't discharging it. I beg your pardon? The stay is not a discharge. No, the stay is not a discharge. So that discharge provision is just about discharge. In fact, if you were right about Section 7, you wouldn't need the discharge provision at all. Isn't that right? If you're right about what Section 7 means, you don't need the discharge provision. We don't. But you're there. Exactly. So doesn't that indicate maybe Section 7 doesn't mean what you say? No, I think it's actually an indication that Section 7 and its sweeping language apply, and then you have other considerations weighing in. I really think it's Congress saying time and time again in various ways, leave federal funds and federal grant funds alone. Okay. So Congress also said, and the state picks up on this, don't use federal funds to pay state obligations. And they then say we're only using Commonwealth funds here. But is that a possible reference for the except as otherwise provided? If there were a court order, for example, requiring the use of federal money to pay a Commonwealth obligation, would that be a prohibition? I'm not sure I understand your question entirely, Your Honor. I'm probing more on the except as otherwise provided language. Your brother said actually it refers to the state, but it also refers to all of the other incorporated provisions of the Bankruptcy Code, and Judge Barron referenced some of them. Yes. So you say the language is a mere surplusage. It has no meaning. We're probing you on that statement because it's a little bit hard for a court to say Congress either didn't know what it was talking about or put in a phrase that has no meaning whatsoever. Well, I think that's true. What is true? That it's hard for a court to say that Congress didn't know what it was talking about. I think that's unchallengeable. We're looking at it from a slightly different perspective, Your Honor, and if I may, it's my complaint. Yes, please, and then we have another question. We usually have a unique situation here, and that's what we try to emphasize in our papers. This is our clients and the money they get under a separate grant under Section 330 of the Public Health Service Act. We wind up in a situation where either they grab Medicaid money and use it for their activities, or they have to use Section 330. Any poor person in their communities who comes for aid gets aid and assistance. We really have a circumstance here where if we employ federal funds, and we've tried to explain this, and I think the court has given recognition to this concept in its prior decisions, whenever we wind up paying Section 330 money instead of Medicaid, it's federal money that's being paid. Section 330 actually doesn't authorize the giving of... But you're under no obligation to use the federal funds to pay it. We are under an obligation, Your Honor. You're under an obligation to pay it, not to use federal funds to pay it. We have no other revenue, Your Honor. That may be true, but that doesn't mean you're under an obligation to do it. We're under an obligation to treat. Treatment costs money. Right, but you wouldn't be out of... Just because you don't use the federal funds doesn't mean you're out of compliance. The only obligation the court has imposed on you is to pay it. That's correct. We have an obligation... Yes, that's the court. But if we have to treat, we have to be able to pay. You have doctors, you can't have them do it for free. So there's a separate provision that says you're not allowed to use the federal funds to pay it. There's no obligation from a court saying you must use the federal funds to pay it. There's just an obligation to pay it. If you can't meet the obligation because you don't have the Commonwealth funds, and there's a separate PROMESA provision saying don't use the federal funds, it just means you're not meeting your obligation. It doesn't mean that there's any requirement to use federal funds. But the logic of that, Your Honor, would be that Congress would leave you in the lurch, and there would then either be no services or a cutoff of grants, and we just don't think that logic could possibly obtain. Okay, your brother's alternate argument, moving from the accept as otherwise provided argument, was that the automatic stay does not, is simply a temporary stay. It does not impair or in any manner relieve the Commonwealth from compliance with federal laws, so on and so forth. What is your response to that? We're getting payments now, Your Honor, that are predicated on three years in a prior decade. There has been progress made before a special master and findings that already are made by stipulation and, by the way, by announcement of the Commonwealth, where we're debating exactly how much costs our payments should be increased. All the payments are going up. There's one grantee out of the mix that may not get better, but there are other issues as well because we're operating right now on a fixed level of enrollment. Are you saying that if you stop the proceedings before the special master, it is a manner relieving the territorial government from its obligations because it will delay even further the making of these payments? Your Honor, yes, it delays. The real reason I give the details is because right now you don't have full compliance and everybody knows it. Can I just add, I just want to get one practical thing. You seem to have some understanding of what happened with the parallel state litigation. My understanding is that the stay is in place and that she relieved it so the rebasing process can continue, but she did not relieve the automatic stay with respect to execution of the judgment. When the motion was made to say you should, or at least let us decide about it being dischargeable or nondischargeable, she said it's not ripe yet, presumably because we're not even at the point where you'd be executing on any judgment. And I understand that must mean because so long as the rebasing process can continue, enough of the payments are going through, there's no need to execute any judgment. But those judgments, Your Honor, are for claims which were bought separately from the claims that were bought in final court. So I want to understand practically with respect to the prospective payments. Yes. If Judge Swain were to conclude, as we were to conclude, that the automatic stay applied, and you then went to get relief from the automatic stay before Judge Swain, and she issued the identical relief order as the prospective litigation that she did with respect to the retroactive litigation, so the entire rebasing process can go on, but she said I'm going to keep the stay in place with respect to the execution of any judgment because I don't want anything executed on it until I get a picture of what the whole thing, entire Title III process looks like. What would be the practical problem that would pose, and would it be any worse than the situation you're in with respect to the retroactive litigation? If you have a court waiting for some kind of formal action, and that would be by virtue of your hypothetical as to what Judge Swain would do, then we're really stuck with having the special master make a decision, appealing to Judge Helpe, waiting for that appeal. We would have a whole. That's exactly what you're in the situation with respect to the retroactive litigation right now, right? The retroactive litigation being our so-called state case? Yes. Yes. We are in that situation. Right. But we're not in that situation, or we don't think we should be in that situation in the current prospective injunctive. But you haven't sought appeal. It's the same parties in the retroactive litigation as in this one or not? I didn't understand your question. Is it the same parties to the retroactive litigation as to the prospective? Many. And none of them sought relief from or sought to appeal her order relieving the stay only in part, right? Judge Swain's order? Yes. Well, if we're talking about the same one, it only came out recently. So the time for appealing that hasn't run? I'm sorry. If we're talking about the original state case. I'm just trying to figure out why there's any reason for the prospective litigation and the retroactive litigation not to be moving in the same way. Your Honor. If there's not, then. So I think my answer would be this. We have a view where they should be and where the law would apply uniformly. Judge Swain's discernment, which was very recent, would be looking at a state case and saying where are the judgments. This is part of the remand. There's a remand, and then she just recently decided something else. She would be saying I need the judgments to act upon. First, because you claim monetary damages or monetary problems, and you went to state court, and I need final judgments. So I remanded to the court to enter those final judgments, whatever they may be. And with respect to your other case or another matter, I don't, and then it's back to what you were saying earlier, Your Honor, which is I don't read that as a situation right now to be such that you're being impaired. Nothing really has happened. There is no trigger effect, and I don't see, and I think that's the essence of her decision. But is that partly because she's allowing the rebasing process to continue? I don't think she's talking, the rebasing. That has nothing to do with rebasing. The rebasing is all with the perspective, yes. Got it. And that's for the purpose, by the way, of complying with the statute. Right now there is no such compliance. We'll hear from your co-counsel. Good morning, and may it please the Court. I'm Robert Graham for another group of the athletes in this matter. It sounds, I'm getting the sense there's some confusion about the relationship between the proceedings in the state case that were Maybe just my confusion, but I would like to understand it. Well, let's start with the, I think you ultimately concluded with Mr. Feldman, that the remand by Judge Swain to the court of first instance in San Juan was not for the purposes of rebasing. Okay. It was really to reduce the judgment to a some certain, and those proceedings are moving forward before the special master in that matter. And so once that is reduced to a judgment, at that point they are free to present it to the bankruptcy court as a claim. But the state does apply with respect to the enforcement of any money judgment out of that matter. But are you saying that it's a some certain, but it's not a some certain based upon the rebasing procedure? No. The rebasing has nothing to do with what happens in the state case. Those rates are set. Those have been set for some years now. There were some issues as to some of the factors in the original special master's calculations in that case. But functionally speaking though, okay, I get that. It's not rebasing. There's a dispute about what's owed. There's a dispute about what's owed here. The dispute about what's owed here comes from a dispute over rebasing. The dispute about what's owed there comes from a dispute over a different kind of calculation, right? Correct. And in that case, with a dispute over that calculation, which is not about rebasing, the execution on the judgment is stayed. Correct. And does that cause you any practical problem? No, because we do not hang our hat on Section 7 entirely. Certainly. So if that causes you no practical problem, even if it's legally wrong, I just want to say what the practicalities of this are. If there's no practical problem there, if you've got a similar order here in which she said the automatic stay applies, all I'm going to leave it in place for is the execution of final judgment. Everything else you need to know to reduce it to a sum certain, including rebasing, you're free to continue to do. Would that cause you any problem? It would for at least two reasons. First, we've got two statutory provisions that we're relying on here. Not a legal point, just practically. From a practical standpoint, we've got an injunction that was entered back in 2010, which actually incorporated an injunction that was entered back in 2004. There was a finding of irreparable harm, both in 2004 and in 2010, in the interim order after remand in January 2009, saying that there would be irreparable harm to these plaintiffs if they do not receive ongoing payments. This is like a child support obligation. Somebody declares bankruptcy and they've got a child support obligation, they still remain obligated to satisfy the child support payments. The reason being, the spouse and the child need those ongoing payments on a regular basis. It's not sufficient to say, well, let's wait until the end of the bankruptcy and then satisfy the payments. We've demonstrated in this case that people will go under if they do not receive their regular wraparound payments. So that's the practical problem. And there never was an injunction sought with respect to retroactive payments? No, because you don't get injunctions for retroactive payments. That's just damages. But the damages would be to cover the costs, right? Well, presumably, but at the same time, we've litigated this to a fairly well, whether the 11th Amendment prohibits the award of damages in this case. But really, what it comes down to in, for our purposes, what came out in our papers, I believe, is the basic principle that the bankruptcy code does not relieve you of your obligations under law. So Section 7 is a general statement to that effect, I would say, but it's not the central provision that we are relying on. We're relying on two provisions which are really two sides of the same coin. We've got Section 304H of the code, and that's the discharge provision. And we've already discussed, to some extent, the practical issue is the discharge issue. The fact that they are not, discharge of the payment obligation doesn't mean that it's sufficient to wait until the end of the judgment to satisfy the payment obligation. But isn't that what discharge means in bankruptcy? It's permanent? Well, you've got discharge of financial obligations. You've got discharge of compliance obligations. And what Section 304H says is that you are not discharged of your compliance obligations. And if you do not comply with the law on an ongoing basis, you are not satisfying your compliance obligations. So that is one side of the coin. The other side of the coin is Section 204D, and I think that that's the chief provision on which we rely here, which clearly states that no provision under this chapter, meaning PROMESA, should be construed as allowing the interference or impairment of compliance with. But it doesn't quite. It says the oversight board shall not exercise applicable authorities to impede territorial actions taken to and then the compliance with a court order. And your opponent says the PROMESA board didn't act here. It's the automatic stay provisions. That's his argument. What's your response? The response is the only reason the automatic stay provision applies is by virtue of an action by the oversight board. The oversight board is the only entity that's authorized to file a PROMESA bankruptcy petition. But if you filed the petition to impair federal obligations, that's not why it did it. I'm not – and I'm sure that nothing that the oversight – the oversight board is authorized to impair the obligations. The only action they took was to file a petition. They didn't file the petition in order to impair federal obligations. They filed the petition for a thousand other reasons. Then the automatic stay has the effect of impeding it. Well, but there's nothing in the statute that says they can do it indirectly, what they can't do directly. And so effectively what you're saying here is that they could – that as a – by inattention rather than by design, they could interfere with the injunction. And I don't think that that's – that that is a fair reading of the text. But more to the point, effectively what the Commonwealth is saying is they're going to try to avail themselves of an authority not granted to the oversight board to protect themselves. Effectively, they're trying to use the automatic stay as a sword rather than a shield here. They're trying to get out from under an obligation that they clearly otherwise are subject to under the express terms of FOMESA and under the express terms of the injunctions that we have in place. So what about Section 7? Section 7 I think is, like I said, a general statement that you are – that nothing in this law will excuse you from compliance with other laws. All right. So going back to your discharge, for you to win, it depends on us drawing a distinction between compliance obligations and discharge of financial obligations? I don't think that it really turns on that. I think that – What does it turn on? I think that the stronger argument is Section 204D, that nothing – no authority conferred on the board shall be construed as allowing it to – If you're right about 204D, does that mean that the discharge provision is unnecessary? No, I don't see it as unnecessary. Again, I see it as two sides of the same coin. That's a way of saying it's unnecessary if I – if it's the same coin. Well, it – In other words, if you're right about what you say about the taking action, you don't need the discharge provision because the provision you're pointing us to itself says you can't impair any of that. So why do you need a separate provision for discharge? That would already say you couldn't discharge it. As I read those two provisions together, 304H says the obligation survives despite any stay of litigation. 204D says it remains enforceable despite any stay of litigation. There's no reference to stay in either provision. There's impair or in any way – what is it, impair or in any way relieve? What's the – in the provision you're saying, what's the language? 204D is impair or interfere with compliance with any obligations under – Would discharge do that? Would discharge – Impair? Yes, it would. Yes, so you don't need the discharge provision if you're right about 204D. It's totally unnecessary. Well, I will take 204D. What? I will take 204D. Okay. If that's – if that – if that – if that you think is sufficient, I will agree with you. But then that turns on the question Judge Lange asked you. Doesn't that depend on drawing a distinction between financial obligations and compliance obligations? I think ultimately if we are hanging our hat to any extent on 304H, then yes, there will be a distinction. But I would encourage – I would remind everyone that in this case, the compliance obligation is, again, very much like a child support obligation. We have a finding by the district court, longstanding finding, that has been challenged and upheld by this court, that the plaintiffs in this case would suffer irreparable harm if they do not receive their regular payments under the injunction. If you thought Section 7 was pertinent, unclear to me, you would say the finding of irreparable injury earlier necessarily means impairing or in any manner relieving the government from meeting its obligations? That sounds like a fair characterization, yes. I mean, I'm not trying to be slippery, Your Honor. It's just that I don't have the language in front of me. All right. So I will say yes. Just one last question. You keep referencing the child support provision, which I understand. But suppose it was just an – an ordinary bankruptcy. There's an injunction for irreparable harm not about child support. This says it's irreparable harm if the debtor doesn't pay the creditor. Creditor will suffer irreparable harm. The automatic state could still apply notwithstanding that finding, right? Yes. Okay, that's what I just wanted to say. But in this case, we've got two separate provisions that make specific reference to injunctions and court orders, but why it applies to federal programs. But even if you had a hundred of them, in an ordinary bankruptcy, the general idea is the state can still apply to interfere with the injunction. And as you say, in an ordinary bankruptcy. So what you need is some special provision in PROMESA saying it doesn't apply. Correct, and we believe that we have that. You have that, and I get it. Yes. Any other questions? I think I've gone way over. We may call on you later, but it is your brother's turn for his reserved time. Yes. I will continue answering the question that Judge Lynch posed me to discuss the different statutory provisions that the appellees are relying upon. And going to Section 204D, basically they say that the Oversight Board cannot take any exercise applicable authorities to impede territorial actions taken to, among other things, comply with court orders and federal obligations. The problem with that argument is that the Oversight Board has not done anything to do that. The only thing the Oversight Board did was to file a petition under Title III, which it's allowed to do. What we're talking about here is the effects of the automatic state that comes as a consequence of filing the petition. Okay, and let's assume you're right, hypothetically. What does it mean that they shall not exercise applicable authorities? For example, there are many provisions in PROMESA giving power to the Oversight Board in its relationship with the Commonwealth. And for example, this will serve to the Oversight Board cannot tell the Commonwealth, you cannot use this money, you cannot pay the wraparound payments because you don't have enough money, you have to use this money for other things. So it makes a difference to us that it's the, you're saying the PROMESA Board couldn't come in here and ask to do what the Commonwealth is asking us to do. No, we can't. What I'm saying is that the PROMESA did not, by filing the petition, it did not violate this provision. It did not violate this provision. If it did, they couldn't file the petition. Yes, that's right. You read the text. They have the power to file the petition. And what they're arguing about is one of the consequences of filing the petition, but PROMESA isn't even here. Yes, but they're taking it a step beyond that and saying you're the one who the Commonwealth has now come in and effectively attempted to assert the PROMESA powers in a way that the PROMESA Board would be forbidden to do. And so the Commonwealth can't do it. That's what I understood their argument to be. Yes, that's their argument. But that's why it's important to go to Section 304H, which is the section which is within Title III, which is within the bankruptcy portion of PROMESA, and which is directly related to the question that we have here. And in that provision, Congress could have said the automatic state doesn't apply to any cases that involve the compliance of the Commonwealth with federal programs. And that would be clear, but they didn't do it. They only made a statement about the discharge of obligations. Now, they do have a legitimate argument. And at the time when discharge comes, they may have a legitimate argument before the Title III Court or before any other court, saying that this obligation cannot be discharged. I can't venture how that's going to turn out, but they do have the argument. But Section 304H... But here's my problem. I can understand the discharge of obligations is a very serious matter. We're not there yet. Yes, we're not there yet. At least in this case, we're not. And apparently in the state court litigation, they're not there either. But you want to stop the federal litigation dead in its tracks so that it can never even reach the question of discharge of obligations. Well, that hasn't been our position so far. Our position is to... You're here seeking the application. You're here on an appeal from a district court order that said, no, I'm not going to stay my proceedings. I'm going to let them continue. You're the one who chose to take the appeal. Yes, because we understand that it is not a decision for the district court to make. It is a decision for the Title III Court to make. Your jurisdictional argument. Address me on the merits argument I just made to you. Well, on the merits... Which is we're nowhere close to a discharge in the formal sense of a final judgment, whether or not we buy a distinction between discharge, between compliance obligations. And the Commonwealth is coming in and asking us to stop the proceedings which would lead to the question of discharge. Well, the thing is that the automatic stay is automatic. It stays the proceedings. I mean, the court can decide whether it applies or not. Let me just see if this makes... Your position would be... It doesn't have to be your position. It would be more attractive if in seeking the stay you also made it clear that you would not oppose relief from the stay to permit rebasing to continue. Well, that's... That's, you know, you can either make that representation or you don't. If I understand your position, it is the stay is the stay. The Commonwealth has an interest in proceedings being stayed. If it's not subject to the automatic stay, then in theory they could go ahead and execute on a judgment that they got and start draining all the funds, which the Commonwealth does not want that to happen. No, of course not. So you need the law to be that the stay is in place. The question of whether this particular litigation, given its history and all the needs of it, should be granted relief from the stay so that all the rebasing can continue is a distinct question. All indications are Judge Swain probably would grant relief from the stay if it was sought. But you're just saying to get to... That's the proper process. First we've got to make sure there's a stay in place. Yes. What will happen... They're entitled, I mean, and this court told them so much, they're still entitled to file a petition before... And in the meantime you accomplished delay, correct? Huh? And in the meantime, if you go through all of that, you will have accomplished further delay in these proceedings. You did not say to the district court, as Judge Barron started with, even if the automatic stay were to apply, we would agree that there is relief from the stay to permit these proceedings to go on. No, we did not... That was not your position. It is not the logic of your position. The logic of your position is to delay all of this, force further proceedings, and delay the conclusion of the matters being heard by the special master. The effect would be to delay somewhat, the resolution of that issue. Eventually it will be decided. In fact... How many years into the future? Well, precisely, that's why they have the remedy before the Title III Court. The Title III Court may decide. We were negotiating to have an agreement. It didn't work out. How long did it take Judge Swain to rule on the request for relief from the retroactive? Well, it doesn't... From what I've seen, it will take maybe, I don't know... Weeks, right? Weeks, yeah. Some weeks, or maybe a couple of months, depending on how... I mean, I can't pretend to predict what the Title III Court will do, but yeah, weeks, maybe a couple of months. Once the parties start proceedings there, that would largely duplicate the proceedings before the Federal District Court there, in this case, and before us. Correct? Well, if there's a stay, if the stay applies, the District Court will not be doing the proceedings. The Commonwealth never suggested, this is where I started, that this was a matter that needed to be brought to the Title III Court. Never. That was your first answer to my first question. Yeah, this case, my answer, yes. I stand by that. Is there anything else you need to tell us? No, no. I can also meet the case. Thank you. No. Thank you much. It's a complicated issue.